Jonathan **BOYCE** (F. Gordon Boyce, Administrator of the Estate of Jonathan Boyce, Deceased, substituted in the place and stead of), Plaintiff-Appellee,

v.

**PI KAPPA ALPHA HOLDING CORPORATION**, Defendant-Appellant.

No. 72–1540.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1973.

Rehearing Denied April 20, 1973.

448

Steven R. Berger, Raymond J. Dwyer, Miami, Fla., for defendant-appellant.

Larry S. Stewart, L. Edward McClellan, Jr., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, MOORE * and RONEY, Circuit Judges.

MOORE, Circuit Judge:

■ This is an appeal from a Florida common law negligence action which was removed from the Florida State court to Federal District Court on grounds of diversity jurisdiction. The complaint alleged that plaintiff-appellee Jonathan Boyce on July 20, 1970, was an invitee at the Pi Kappa Alpha Fraternity House on the University of Miami campus (hereinafter "Pike House"), premises owned by defendant-appellant Pi Kappa Alpha Holding Corporation, and that as a result of defendant's negligence, plaintiff was caused to dive into an empty swimming pool and to sustain paralytic injuries. The cause came on for trial by jury on October 13, 1971. After several days of testimony special interrogatories were submitted to the jury which required them to determine the status of the plaintiff on defendant's property, the negligence of the defendant, and the degree of negligence, if any. The jury determined that plaintiff's status had been that of an invitee, that defendant had been negligent, and that defendant's conduct constituted willful and wanton negligence, the latter determination precluding a jury finding on the question of plaintiff's contributory negligence.[1] The plaintiff was awarded damages in the amount of $850,000.

* The Honorable Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. The Special Interrogatories submitted to the jury, and the jury's responses thereto, were as follows:
   1. What was the status of the Plaintiff at the time of his going upon the premises of the Defendant? (Check one)
      (a) Invitee  √
      (b) Licensee
      (c) Trespasser

   2. With respect to the status of Jonathan Boyce as you find it in Interrogatory No. 1 and the duty owed to him under that status, do you find from the greater weight of the evidence that the defendant was negligent? Answer "yes" or "no".
      Answer Yes

   3. If your answer to Interrogatory No. 2 is "yes", do you find from the greater weight of the evidence that the defendant's negligence was a legal cause of plaintiff's injuries? Answer "yes" or "no".
      Answer Yes

On appeal from that verdict, and judgment thereon, the defendant-appellant here asserts numerous points of error. Resolution of this appeal must necessarily commence with a recitation of the facts surrounding this most unfortunate event.

On July 20, 1970, plaintiff-appellee Boyce was a student at the University of Miami in Coral Gables, Florida, and a member of the Phi Delta Theta social fraternity. Then 23 years old, he was attending the university's summer session. At approximately 2:00 P.M. on that date plaintiff, his fraternity roommate Charles Parker, and several others went to the Varsity Inn, a student beer parlor which they frequented, on the average, once or twice weekly. The small group remained at the Inn until 5:30–6:00 P.M., socializing and drinking beer. The beer was purchased primarily in pitchers measuring approximately twelve inches high by six to seven inches wide. Although plaintiff could not recall precisely the amount of beer he consumed during this 3–3½ hour period, he testified at trial to having drunk more than five glasses (Trial Transcript, hereinafter "Tr.", at p. 571), while his roommate testified that he himself had consumed "a pitcher or two" (Tr. at 223). Other testimony established that plaintiff ate nothing from noon onwards that day. At approximately 6:00 P.M. the group decided to take up a collection among themselves and to purchase a 15½ gallon keg of beer, for consumption that evening. The keg was bought and set up at the Phi Delta Theta house and the small group, including plaintiff, at 7:00–7:30 P.M., resumed the drinking begun in the early afternoon at the Varsity Inn. At 8:30 P.M. plaintiff's girl friend, Nancy Lindberg, arrived at the party with her roommate, Susan Bowen. Miss Lindberg testified that, during the time she was present, she observed plaintiff consume "four or five" twelve-ounce cups of beer. (Tr. 261, 277). The plaintiff testified that he could not recall the precise quantity he had consumed during the evening.

At approximately 11:30 P.M. either plaintiff or Parker suggested that they and the girls go to the Pike House, two blocks distant and the only fraternity on campus having a swimming pool, for a late night swim. Apparently, all intended to swim dressed in street clothes. (Tr. 231). The group departed for the Pike House, plaintiff carrying Miss Bowen draped over his shoulder, and Parker and another (one "Dennis") carrying Miss Lindberg between them, their hands and arms in chair-like fashion. The plaintiff and Miss Bowen arrived at the darkened pool area several minutes before the other three. Playfully, Boyce threatened to throw Miss Bowen into the pool, but protesting, she was able to persuade him to set her down. He placed her down, apparently with his back to the pool, and then he either dived or jumped into an empty pool, at a depth of four to five feet, landing on his back.[2] On hitting the pool floor plaintiff instantaneously severed his spi-

---

4. If your answer to Interrogatory No. 3 is "yes", do you find from the greater weight of the evidence that the defendant's conduct was wanton or willful? Answer "yes" or "no".
   Answer Yes
5. If your answer to Interrogatory No. 4 is "no", was plaintiff himself negligent? Answer "yes" or "no".
   Answer [not answered]
6. If your answer to Interrogatory No. 5 is "yes", was plaintiff's negligence a contributing legal cause of the injury complained of? Answer "yes" or "no".
   Answer [not answered]

(Trial Record, pp. 576–77.) Under Florida law, contributory negligence is not a defense to willful and wanton misconduct. Johnson v. Rinesmith, 238 So.2d 659, 660 (Fla.D.C.A. 3, 1970), Horne v. Georgia Southern & Florida Ry., 421 F.2d 975, 980 (5th Cir. 1970), Florida Southern Ry. v. Hirst, 30 Fla. 1, 11 So. 506, 513 (1892).

2. Neither the plaintiff nor the witness Bowen could testify as to the precise manner by which entry into the pool was made.

nal cord, causing virtual total paralysis from the shoulders down.[3]

At trial the theory of plaintiff's case was (1) that plaintiff had been an invitee on the defendant's premises, by virtue of defendant's express and implied invitations to plaintiff to use the swimming pool;[4] (2) that although plaintiff had never used the pool he had seen it full numerous times in the past and had no knowledge that the pool lacked a filter system, which necessitated that it be fully emptied for purposes of cleaning; (3) that defendant was negligent in constructing and maintaining its pool in violation of a city ordinance,[5] in not providing adequate lighting around the pool area, and in not giving some warning (e. g., fencing the pool off during the emptying procedure) to indicate that the pool was dry and in a hazardous condition; (4) that defendant's negligence was the proximate cause of the injury, and that the negligence was of a "willful and wanton" nature; and (5) that plaintiff could thus recover for past and future medical expenses, loss of future earnings, and pain and suffering.

While denying that it was negligent in any way, defendant raised the affirmative defense that plaintiff, a trespasser, or at best a licensee, on its property, had been contributorily negligent in failing to exercise due care for his own safety.[6]

3. The plaintiff expired on January 14, 1972, approximately three months after judgment was entered below. Counsel for appellee indicated that death was not caused by any injuries involved in this litigation. (Appellee's Br. at p. 11 n. 4).

4. Testimony from various witnesses at trial supported the finding that plaintiff was an invitee. In exchange for invitations to the parties of other fraternities or sororities, the Pike House some time in the past had issued a "standing invitation" to members of other fraternities and sororities to use the pool, and it was common practice for such members to use the pool both on "special" and other occasions. (Tr. at 128–30) The plaintiff also testified to having received a personal invitation to use the pool "any time" from an officer of the Pike House.

Although the question of plaintiff's "status" was properly submitted to the jury, and the evidence supported the finding that he was an "invitee", this issue may now be academic under Florida law, by virtue of Camp v. Gulf Counties Gas Co., 265 So.2d 730 (Fla. D.C.A. 2, 1972). This case appears to abolish in Florida the distinctions which previously have been drawn regarding the duties owed to invitees, licensees, and trespassers, and to substitute therefor a single duty of reasonable care under the circumstances existing. See 265 So.2d at 731, where the court states:

We extrapolate, from a recent decision of our Supreme Court [Post v. Lunney, 261 So.2d 146 (Fla.1972)] a trend toward the sound view that there is not, as Lord Dunedin once suggested, "an absolutely rigid line" separating invitees, licensees and trespassers. [citation omitted] It now seems clear that our court has come to the view that "The duty is not to invitees as a class, but to the very person himself who is lawfully there. What is reasonable care in regard to him depends on all the circumstances of the case."
See also Smith v. Arbaugh's Restaurant, Inc., 469 F.2d 97 (D.C.Cir. 1972).

5. Section 9.09 of the Ordinances of the City of Coral Gables, enacted in 1961, requires that
(e) * * * Unless the pool is entirely screened in, it must be surrounded by a protective wall or fence four feet (4') in height * * *.
(f) Gates in the protective fence and/or wall required by the Zoning Code shall be the spring lock type, so that they shall automatically be in a closed and fastened position at all times. Gates shall also be equipped with a safe lock and shall be locked when the swimming pool is not in use.
It was conceded by the appellant that the pool violated this ordinance, and that under Florida law violation of an ordinance constitutes negligence; but appellant argued that either standing by itself, or as part of the total circumstances involved in this case, violation of this ordinance does not give rise to willful and wanton negligence.

6. At trial defendant-appellant attempted to establish that the plaintiff had been intoxicated when he dived into the pool. At page 13 of its Brief on appeal, however, appellant concedes that " * * * there was no direct testimony that Boyce was intoxicated when he went into the pool. Some witnesses testified that Boyce did not seem intoxicated (Tr. 54, 171,

Defendant argued that, although the pool area was quite dark, the light provided by nearby street lamps and the moon was sufficient to enable plaintiff to have seen that the pool was empty, had he bothered to look;[7] that, although violation of the city ordinance (failure to fence and lock the pool) constituted negligence under Florida law, the totality of the circumstances involved, as a matter of law, could in no way support a finding of willful and wanton negligence; that the issue of willful and wanton negligence, as a matter of law, should thus be withheld from the jury; and that the issue of contributory negligence was for jury determination.

Because in arriving at its verdict the jury did not determine the question of plaintiff's contributory negligence (*see* Special Interrogatories, note 1, *supra*), and because we rule that the Trial Judge erred in submitting the issue of willful and wanton negligence to the jury, we reverse the judgment below and remand the cause for a new trial, with instructions as indicated hereafter.

■■■ We note at the outset that Florida law controls. Analyzing the evidence in a light most favorable to the plaintiff-appellee, as we must upon a challenge to the sufficiency of evidence to support the jury verdict, Boeing Co.

v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (*en banc*), we are of the opinion that the facts recited do not support a finding of willful and wanton misconduct by defendant. It is well settled that whether or not the totality of a situation evidences gross negligence or willful and wanton misconduct is a jury question, subject, however, to an initial determination by the trial judge that sufficient evidence exists to justify submitting the issue to the jury. Hodges v. Helm, 222 So.2d 418, 420 (Fla.1969); Carraway v. Revell, 116 So.2d 16, 22 (Fla.1959); Cormier v. Williams, 148 Fla. 201, 4 So.2d 525, 526 (1941). The narrow issue we must here determine is whether the conduct of defendant meets the test of "willfulness and wantonness" established by Florida law. Although numerous jurisdictions have abandoned attempts to distinguish among degrees of negligence, see 57 Am.Jur. § 94 and cases there cited, Florida apparently continues to hold fast to its common law tradition. Recent Florida decisions [8] have drawn fine distinctions among the traditional categories of negligence: (1) "ordinary negligence"; (2) "gross negligence"; and (3) "willful and wanton negligence", the latter being considered a "more culpable" form of misconduct, that is, conduct which is more in the na-

---

217, 271), though one police officer could smell alcohol when rendering aid. (Tr. 65)." Careful reading of the Transcript shows that every witness testifying indicated the opinion that Boyce did not appear intoxicated, that he spoke distinctly with no slurring, and that he was "sharp" and "lucid" immediately prior to and after the accident. The witnesses so testifying included the campus security officer (Tr. 54), the rescue personnel (Tr. 79–80), the attending physician at the hospital (Tr. 399), as well as the plaintiff's companions that evening. Even the police officer alluded to *supra* by the defendant indicated that the alcoholic fumes he smelled while rendering aid to the plaintiff appeared to emanate from one other than the plaintiff. (Tr. 69–70).

7. At trial there was conflicting testimony as to whether there existed any lighting by which plaintiff could have seen that the pool was empty. There were outside lights

around the pool area, regulated by an automatic timer, but these were not turned on. Testimony did not establish why the timer did not operate properly on the night of July 20, 1970. The trio of Parker, Lindberg and "Dennis", arriving at the pool minutes after Boyce had suffered his injury, also had great difficulty in determining whether there was water in the pool. Parker and Lindberg testified that the trio approached the pool and that Parker and "Dennis" were about to throw Miss Lindberg into it, and in fact began to do so, only to pull her back upon hearing Boyce holler that the pool was empty. Lindberg was caught in midflight by a leg, hitting her head on the side wall of the pool as a consequence. (Tr. 214–15, 268, 286–87)

8. See Carraway v. Revell, 116 So.2d 16 (Fla.1959); Glaab v. Caudill, 236 So.2d 180 (Fla.D.C.A. 2, 1970).

ture of an *intentional* wrong. In Carraway v. Revell, *supra*, the Supreme Court of Florida attempted the admittedly difficult conceptual task of defining the "degrees" of negligence inherent in the just stated categories. After assigning each to its comparative level of culpability by noting that "gross negligence * * * is that kind or degree of negligence which lies in the area between ordinary negligence and willful and wanton misconduct," the court quoted from an earlier opinion, Bridges v. Speer, 79 So.2d 679, 682 (Fla.1955):

> We think the rule which would more nearly solve the problem than any other would be one which recognized that simple [ordinary] negligence is that course of conduct which a reasonable and prudent man would know *might* possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. To put it another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or "clear and present" that negligence is gross, whereas other negligence would be simple negligence. 116 So.2d at 22–23. (emphasis in original.)

If, as the quoted language indicates, a finding of gross negligence requires *knowledge*, actual or constructive, by the actor that injury to another is imminent or "clear and present", then, *a fortiori*, a finding of willful and wanton negligence under Florida law must meet the *knowledge* requirement, and more. In a more recent case, Glaab v. Caudill, 236 So.2d 180, 184 n. 13 (Fla.D.C.A.2, 1970), the court stated:

> Since Carraway v. Revell, * * * we now perceive "willful and wanton" conduct to be criminal negligence, amenable to punitive redress, whereas gross negligence as such is necessarily something less. We therefore distinguish a "conscious disregard of conse-

quences" [gross negligence] from that "wantonness or recklessness, * * * or that reckless indifference to the rights of others *which is equivalent to an intentional violation of them.* (emphasis in original.)

Extracting from these pronouncements the essential elements of willful and wanton misconduct, we note that (1) the actor must have *knowledge,* actual or constructive, of the likelihood that his conduct will cause injury to other persons or property; and (2) the conduct must indicate a *reckless indifference* to the rights of others, that is, conduct which may be termed equivalent to an *intentional violation* of those rights. *See* 57 Am.Jur.2d, Negligence §§ 101–105, 65 C.J.S. Negligence § 63(38).

To take our analysis a step further, the cases teach that willful and wanton negligence may be of two types: (1) that involving an *affirmative act* by the defendant; and (2) that involving a *failure to act,* or an act of omission, by a passive defendant. The first type is the more usual, as, for example, the conduct we dealt with in Horne v. Georgia Southern & Florida Ry., 421 F.2d 975 (5th Cir. 1970), where the defendant railway company was found to be willfully and wantonly negligent when its trainman overtly (affirmatively) backed a train over a busy pedestrian crossing, failing to keep a lookout (reckless disregard) despite prior express warnings (actual knowledge) that injury was likely to result at the crossing. The train hit, then dragged to death, the plaintiff's wife. We said there, quoting from an early Florida Supreme Court opinion:

> Where a party has inflicted an injury intentionally, or where it has been done through negligence, and hence unintentionally, and his conduct in doing it has been wanton or reckless of its injurious consequences, the contributory negligence of the person injured is not a defense to an action brought by him for such injury. [citations omitted] 421 F.2d at 980.

In the cases involving a defendant's failure to act, the conduct of the passive defendant has been held to be willfully and wantonly negligent only if the *totality* of the circumstances involved warrants such a finding; for example, if the actor *knows* that injury will likely result from his failure to take steps to correct a known danger on his property. *See* City of Boca Raton v. Mattef, 91 So.2d 644, 648 (Fla.1956); Banks v. Young Men's Christian Ass'n of Greater Miami, 176 So.2d 570, 571 (D.C.A. 3), cert. denied, 183 So.2d 213 (Fla.1965). In *City of Boca Raton* the court, denying recovery for an alleged wrongful death of plaintiff's husband, held that a property owner's failure to act constitutes willful and wanton negligence *only* if the owner has knowledge of the danger or hazard, and knowledge that the plaintiff is about to be confronted with the danger. 91 So.2d at 648. Similarly, in *Banks* the defendant had failed to provide handrails or safety devices on stairs, allegedly in violation of a municipal ordinance, just as here the appellant violated the city swimming pool ordinance; the plaintiff, a licensee, was injured as a result of a fall on slippery stairs. The court held that defendant's violation of the ordinance and its failure adequately to protect the plaintiff fell short of willful and wanton negligence. 176 So.2d at 571. *See also* Britz v. LeBase, 258 So.2d 811, 813–814 (Fla.1972).

■ It is clear to us from the authorities cited that the appellant's conduct in the instant case similarly falls short of willful and wanton negligence. We reach this conclusion by noting that the facts presented fall into the "failure to act" or "failure to protect" category of cases—plaintiff's injury resulted from a condition on defendant's premises, and not from an overt or affirmative act by defendant. Although defendant might have been held liable for negligence in failing to provide adequate lighting, in failing to fence in and lock its pool (in violation of the ordinance), and in failing to give adequate warning that the pool was dry and thus hazardous during the cleaning operation, we do not perceive here the *"reckless indifference* to the rights of others, that is, conduct which may be termed equivalent to an *intentional violation* of those rights" necessary under Florida law for a finding of willful and wanton negligence. In summary, the facts will not support a conclusion that defendant had a design, purpose, or intent to cause the injury here incurred or that there was a knowing and intentional failure on defendant's part to perform such acts as might have prevented the injury. We hold that it was error for the court below to submit the issue of willful and wanton negligence to the jury when the evidence, as a matter of law, did not support a finding of that degree of negligence.

While the tragedy inherent in the facts presented evokes the sympathy of this Court, the case should have been submitted to the jury with instructions based upon those principles of negligence law applicable to the evidence adduced. We have noted the other points raised by appellant and we are of the opinion that their resolution should properly be reserved for retrial below. The judgment appealed from is, therefore, reversed, and the cause is remanded for a new trial not inconsistent with the conclusions we have reached.

JOHN R. BROWN, Chief Judge (concurring):

I concur fully in the Court's decision and Judge Moore's opinion for us. As this case points up a procedural problem of great importance and in which I have taken a special interest, I offer this concurrence in which my Brothers also join. I add this only to point out once again the remarkable utility of the general charge with special interrogatories under F.R.Civ.P. 49(a). See, Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338.

What sets this case apart is that the trial judge—probably from an unfamiliarity with this device born out of a local traditional submission on a general

charge, general verdict structure—went both too far and not far enough. The result is that the case must now be remanded for a wholly unnecessary retrial and probably a second and likewise unnecessary appeal. Added to this deficiency, which springs from the way the special interrogatories were structured [9] when used with a general verdict,[10] it was (albeit unknowingly) transformed from a 49(a) to a 49(b) verdict with all the shortcomings of that ancient and now discredited method.[11]

The resourceful trial judge was certainly on the right track in using interrogatories. But where he did not go far enough was in structuring the question on contributory negligence (Int. No. 5) to a "no" answer to wanton or willful (Int. No. 4). For since we have now held that there is sufficient evidence to sustain the finding of simple negligence (Int. No. 2) with proximate cause (Int. No. 3) we would be able to put this case to rest once and for all had the jury been allowed to answer contributory negligence (Int. No. 5) independent of the answer to wanton/willful (Int. No. 4).

Had there been no conditional submission to Int. No. 5 a "yes" answer, in view of our legal holding on insufficiency of wanton/willful, would now result in a complete reversal and rendition. On the other hand, a "no" answer would permit us to affirm the judgment on the basis of simple negligence.

Conditional submission is sometimes appropriate and occasionally required.[12] But where there is a possibility both factually and on legal theories of synthesizing a valid verdict for or against a particular party conditional submission should be carefully avoided.

That was the case here. For it was foreseeable that (i) upholding a wanton/willful verdict would be a formidable (and now unsuccessful) task, (ii) the jury, independent of what it did on wanton/willful or what might happen to the finding on J.N.O.V. or appeal, could (and did) find simple negligence, and (iii) at the same time find no contributory negligence. The legal theories on wanton/willful and simple negligence/contributory negligence were distinctly separate. What the Judge needed was answers on the critical facts of each theory. He could then enter a judgment corresponding to those fact-findings and we, on appeal, could affirm, modify or reverse the judgment according to whatever disposition the law would require if one or more of the distinctive findings were set aside as a matter of law.

In this day and time of explosive docket increases it is unfortunate that one of the busiest trial courts in the Fifth Circuit must now re-try the whole case on simple negligence and damages with a prospect of a second appeal to this court whose docket has exponentially increased over 400% since 1960.[13]

But as with life generally this squandering of precious judicial resources

---

9. See note 1, *supra*, to the Court's opinion.

10. In addition to the answers to the interrogatories the jury was supplied and filled out this form of general verdict:
   "WE, the Jury, find in favor of the plaintiff, Jonathan Boyce, and against the defendant Pi Kappa Alpha Holding Corporation, and assess damages in the sum of $850,000.
   SO SAY WE ALL. . . .
   /s/ W. Burdette Hunton
   Foreman"
   In the formal judgment the trial court quoted this general verdict and without any reference to the interrogatories entered final judgment for Boyce for $850,000.

11. See my recent concurrence in Wolfe v. Virusky, 5 Cir., 1972, 470 F.2d 831 in which I point out the dangers of a witting or unwitting lapse into 49(b).

12. For example, negligence (Int. No. 2) and proximate cause (Int. No. 3) compels it lest the jury either be confused by answering proximate cause with no negligence or risk returning an inconsistent verdict.

13. Though the figures are now out of date see, Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I; NLRB v. Amalgamated Clothing Workers of America, 430 F.2d 966 (5 Cir., 1970).

may turn out to be a blessing. This and other recent cases [14] point up sharply the oft-times simple structural changes which would make the 49(a) special interrogatory verdict complete for whatever adjustments the law demands.

Finally, the use of special interrogatories *and* a general verdict is not only fraught with hazards while all the while depriving the court of the flexibility of 49(a), its use is wholly unnecessary. For if, as is likely, the Judge cast it in this form as a means of having the jury fix the *amount*, if any, of damages, that could more readily be done by adding as Int. No. 7 a simple inquiry to state the answers in dollars.

The 49(a) verdict is indeed the doubt eliminator. Marvelous as it is with an elasticity which allows the Court to deal with nearly every contingency it is both a blessing and a burden. For the travail of anticipating all of the likely contingencies and then constructing the verdict in a way which will permit the jury intelligently and purposefully to supply the answers rests squarely on the trial court.[15] See, Rorem v. Halliburton

Oil Well Cementing Co., 5 Cir., 1957, 246 F.2d 427, 432; R. B. Company v. Aetna Insurance Company, 5 Cir., 1962, 299 F.2d 753, 759 and Barrios v. Louisiana Construction Materials Company, 5 Cir., 1972, 465 F.2d 1157 [1972].

That is the lesson of this case. That is why progress comes even from unintended unseen mistakes.

## ON PETITION FOR REHEARING AND/OR CLARIFICATION

PER CURIAM:

It is ordered that appellee's petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied; and it is

Further ordered, that appellee's request for certification to the Florida Supreme Court is denied.

As to the request for clarification, the request is granted to the extent that the trial on remand is to cover the issues of defendant's negligence and proximate cause; contributory negligence, if any, of the deceased; and damages.

---

14. See, In re Double D Dredging Co., Inc., 5 Cir., 1972, 467 F.2d 468 [1972]: see also Burns v. Anchor-Wate Co., 5 Cir., 1972, 469 F.2d 730 [1972].

15. I have previously discussed the trial Judge's burden at some length.
   "Pitfalls there are, to be sure. But these abound in the law, indeed in any process of thoughtful deliberation looking toward resolution. And nearly all can be avoided by the sort of forethought which ought to characterize the solemn, awesome jury submission which is the climax, or near climax of the whole trial. More than that, to attain the great utility of the 49(a) Special Verdict the Judge is forced to think, and think hard. That is a virtue in itself.
   'The fact is that one of the sometimes unexpected, but wholesome results of special interrogatories jury submission is to emphasize the absolute necessity that there be first a clear understanding of the precise legal issues for jury resolution and then a translation of them into articulate questions which may be authoritatively answered by a simple categorical. In a general way this is to say that not only is it the jury's imprecision which is hidden by the traditional general charge and verdict. Many juridical errors of omission and commission by court and counsel are likewise perpetually concealed.'
   R. B. Co. v. Aetna Ins. Co., 5 Cir., 1962, 299 F.2d 753, 756–757.
   The thinking has to begin with the construction of the charge itself and particularly the climatic questions to be propounded and the types of alternative answers to be employed. This involves a bit of dreaming by the Judge with counsel by anticipating all of the likely, probable answers and then testing these several likely results against the possible existence of conflict or the type or types of judgments which could be rendered under them. With the celebrated vagaries of jury reaction, the Judge and counsel have hardly done their 'homework' unless they have constructed a submission which will reasonably meet these contingencies." Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338 at 351.