**Merrill P. STACEY and Jean C. Stacey,**
**Plaintiffs-Appellees,**

v.

**ILLINOIS CENTRAL RAILROAD et al.,**
**Defendants-Appellants.**

**No. 73-3283.**

United States Court of Appeals,
Fifth Circuit.

March 20, 1974.

Rehearing and Rehearing En Banc
Denied April 22, 1974.

————◆————

Henry D. Salassi, Jr., H. Payne Breazeale, Baton Rouge, La., for defendants-appellants.

Roy Maughan, Baton Rouge, La., for plaintiffs-appellees.

Before CLARK and GEE, Circuit Judges and COX,* District Judge.

CLARK, Circuit Judge:

The jury verdict in this railroad crossing death case was in the form of findings on special issues under Fed.R. Civ.P. 49(a). The railroad appeals from an adverse judgment based upon the findings that it was negligent in failing to keep its right-of-way clear of vegetation at a private grade crossing, and that its negligence was a proximate cause of this accident. It asserts that other findings of causative negligence on the part of the driver of the tractor involved rendered the verdict inconsistent. We affirm the district court's actions in submitting the case to the jury and in entering judgment for the plaintiffs on the special issues verdict.

The setting was approximately a mile north of Kentwood, Louisiana at a point on the main line of the railroad company where a farm road crossed the tracks. At the time of the accident the train, headed south, was traveling approximately 60 miles per hour. A typical farm tractor, pulling a 20 ft. flatbed hay wagon, attempted to cross the tracks in an easterly direction. In the ensuing crash the locomotive struck the hay wagon and the five year old son of the plaintiffs who was riding on the hay wagon was killed. The plaintiffs charged the railroad with negligence in the operation of the train and with failing to keep its right-of-way reasonably clear of vegetation.

Through photographs and the testimony of observers, the jury obtained vivid descriptions of the conditions of visibility then existing. Trees, bushes and undergrowth on the railroad right-of-way lined the edges of the tracks in this area. Due to the density of the May foliage, the field of view was blocked from ground level to heights in excess of 12 ft. The edge of the foliage nearest to the roadbed was slightly irregular but its mean distance generally tapered from about three feet at a point several hundred feet north of the crossing to about 12 ft. at the crossing roadway. The accident occurred during daylight hours on a clear day. Thus, if the driver of the tractor had stopped short of the tracks, he could have proceeded on foot or had one of his passengers walk to a point near the edge of the tracks that would have afforded visibility of any southbound train. If he had remained on his tractor and brought the front end of his vehicle to the closest safe point of approach, he could have, while in the operator's seat at the rear of the tractor, observed any southbound train which was within several hundred feet of the crossing. The driver testified that he looked both ways before proceeding onto the railway. He attributed the failure to see the train to the occluding undergrowth and the speed of the train.

* Honorable W. Harold Cox, United States District Judge, sitting by designation.

The evidence indicating that this particular crossing received frequent use by the missionary group that operated the farm which was divided by the railroad at this site, by deliverers of supplies to the farm, by crews doing power line work, by Boy Scouts going to a camp site and by the railroad itself in performing maintenance work on the crossing was in sharp dispute: The railroad crew, while admitting knowledge that the railroad had maintained this crossing denied that they ever saw anyone use it. The court's instruction on this issue, framed in terms of the ordinary prudent man test, required the jury to gauge the railroad's duty to maintain the foliage on its right-of-way by weighing the danger involved in negotiating this crossing and by determining the frequency of its use by the traveling public. The special issues, as posed, and the jury's answers were as follows:

1. Was the Illinois Central Railroad guilty of negligence?[1] Yes.

2. If your answer to No. 1 is in the affirmative, was that negligence a proximate cause of this accident? Yes.

3. Was Fleet E. Dykes, the engineer on the train, guilty of negligence? Yes.

4. If your answer to No. 3 is in the affirmative, was his negligence a proximate cause of this accident? No.

5. Was Steven Wallace Parrish, the driver of the tractor, guilty of negligence? Yes.

6. If your answer to No. 5 is in the affirmative, was his negligence a proximate cause of this accident? Yes.

7. What is the amount of damages suffered by the plaintiff, Merrill P. Stacey, as a proximate result of this accident? $35,000.

8. What is the amount of damages suffered by the plaintiff, Jean C. Stacey, as a proximate result of this accident? $35,000.

■ The case was properly submitted to the jury. In Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969), this court held that if the record contains substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the case is one for jury resolution. That description fits the evidence in this case.

The lower court correctly relied upon Louisiana's recognition of what is referred to as the "dangerous trap" doctrine. In McFarland v. Illinois Central Railroad Company, 122 So.2d 845 (La. Ct.App.1960), the court held it could be actionable negligence on the part of a railroad to permit the view at a crossing to become obstructed by trees, bushes, weeds and grass. It ruled that questions of negligence and causation on the part of the railroad and the operator of a crossing vehicle were matters for the jury when a vehicle operator would have to proceed to a point of peril upon or dangerously near the railroad company's tracks before obtaining an unimpeded view of a train at an appreciable distance.

■ We reject the railroad's contention that since it had a right to assume any motorist it could see approaching a crossing would stop at such a crossing, it could not have had any duty to take special precautions at this rural crossing where the line-of-sight of an approaching motorist was obstructed by vegetation. The Louisiana law as expressed in *McFarland*, places upon the railroad precisely the duty which was defined by the court in its instructions in this case—a duty of exercising caution commensurate with the situation involved. The testimony as to the frequency of the use of this crossing, as well as its obstructed condition, were factors which were for the jury's weighing. The railroad can-

1. At the time of submission, the jury was instructed with regard to Issue No. 1, "That has to do with the upkeep of the right-of way." No other issue was so defined.

not dissipate its duty to exercise added precaution at a frequently traveled but partially obscured crossing by asserting its right to rely upon the non-negligent operation of vehicles traversing the crossing. We additionally reject the attempt to distinguish *McFarland* on the basis that it related to an urban crossing. The frequency of use of a crossing is the key, rather than its municipal or rural location. *McFarland* assigns the task of translating the amount of use shown into a corresponding standard of railroad care to a jury.

 The railroad's reliance on this court's decision in the Louisiana diversity case of Texas & Pacific Railway Company v. Laborde, 257 F.2d 587 (5th Cir. 1958), to support its theory is misplaced. Mrs. Laborde, the driver of the crossing vehicle, was suing to recover for her own injuries. Contributory negligence on her part was assigned as grounds for reversal and the court held that, as a matter of law, contributory negligence on her part was established by her failure to take the precautions she should have taken in approaching and attempting to traverse the crossing. Consistent with the legal rationale of *Laborde* and the instructions of the court in the instant case, it is true that the jury here found Parrish, the driver of the tractor, guilty of negligence which was a proximate cause of this collision. However, the flaw in the railroad's analysis is that neither *Laborde* nor any other decision in Louisiana jurisprudence holds that the negligence of the driver of the crossing vehicle in such a situation precludes any possibility of negligence by the railroad as a matter of law. To the contrary, Louisiana recognizes that an injury can have more than one proximate cause. *See* Titard v. Lumbermen's Mutual Casualty Company, 282 So.2d 474 (La.1973) and Phoenix

Indemnity Company v. Givens, 263 F.2d 858 (5th Cir. 1959).

 We further reject the railroad's implicit assertion that the jury's answers to the special issues are inconsistent. It urges that since they found Parrish to have been guilty of negligence which proximately caused the accident,[2] they must have found he breached the strict standard of care in traversing a railroad crossing which was properly placed on him by the court's instructions. In fashion similar to its other contention, it reasons from this finding that the jury must have found that Parrish, had he stopped, looked and listened, could have avoided the accident. Such a finding, it insists, means the crossing could not also have been found to be a dangerous trap. The railroad's view of the possible meanings of the jury's findings is obscured. For example, the jury could have found the negligence of the driver of the tractor to have occurred *after* he was in a position of peril, when he tried to complete the crossing rather than backing the tractor down. It may also have considered it negligent for him to go into the "dangerous trap" without stopping the tractor and going, or sending someone else, ahead to look for trains. Perhaps still other possibilities could be shown to exist; however, since there is a view of the case which would make the jury's answers consistent, the district court correctly adopted that view and entered judgment accordingly. The answers could fairly be said to represent a logical and probable decision based on the relevant evidence submitted. That is as far as the court's examination need go. *See* Griffin v. Matherne, 471 F.2d 911 (5th Cir. 1973).

 The railroad raises the spectre that the imposition of liability in this case will signal judicial recognition of

---

2. At the conclusion of its instructions and in response to an objection by the plaintiffs, the court advised that it had included special issues as to the tractor driver who was a non-party, to assure fairness in the jury's perspective of the case by requiring them to reach a total conclusion as to how the accident happened. This action was well within the court's discretion. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2506 (1971).

such a unique and burdensome duty to maintain every private crossing that its ability to operate will be hampered. In the first place, the rule imposed, which we today affirm, is neither unique nor exceptional. The degree of duty owed is traditionally a function of the degree of danger involved. That is all that is involved here. In the second place, while railroads are not insurers of the safety of the motoring public, their efficiency and economy of operation are not above normal rules of law. Their protection from exposure to liability in crossing accidents must be found in actions which are reasonably commensurate with the dangers and extent of use of the crossing involved, not in judicial sanctuary from jury scrutiny.

The judgment appealed from is

Affirmed.