508 F.2d 1103
 Herbert MILLER, Plaintiff-Appellee,
v.
ROYAL NETHERLANDS STEAMSHIP COMPANY and West of England
Shipowners Mutual Protection & Indemnity Association
(Luxembourg), Defendants-Third-Party Plaintiffs-Appellants,
Strachan Shipping Company, Third-Party-Defendant-Appellee
and American Mutual Liability Insurance Company, Intervenor-Appellee.
 No. 74-1237.
 United States Court of Appeals, Fifth Circuit.
 Feb. 28, 1975.
 
 George W. Healy III, New Orleans, La., for Royal Netherlands, etc.
 William M. Kimball, New York City, for West of England Shipowners, etc.
 Stuart A. McClendon, W. Frederick Denkman, Metairie, La., for Strachan Shipping Co. & American Mutual.
 Bruce W. Dinwiddie, Stanley J. Jacobs, New Orleans, La., for Miller.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 CLARK, Circuit Judges.
 
 
 1
 The often lauded special verdict procedure of Fed.R.Civ.P. 49(a)[1] creates the principal problem in this admiralty appeal. Plaintiff longshoreman, Herbert Miller, sued defendant, Royal Netherlands Steamship Company (Royal Netherlands), owner of the motorship ADONIS for injuries to Miller allegedly caused by Royal Netherlands' negligence and/or unseaworthiness of the ADONIS. Plaintiff also sued Royal Netherlands' insurer, West of England Ship Owners Mutual Protection & Indemnity Association, pursuant to the Louisiana Direct Action Statute. Royal Netherlands in turn filed a third-party complaint against stevedore Strachan Shipping Company (Strachan), Miller's employer and against Strachan's insurer, American Mutual Liability Insurance Company, thus completing the now classic longshoremanshipowner-stevedore triangle. See, Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); and Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).[2]
 
 
 2
 Miller sued Royal Netherlands for injuries he sustained aboard the ADONIS on January 10, 1972 while she was docked starboard side to the Washington Avenue Wharf in New Orleans. Miller's gang was loading and stowing pipes in the port and starboard wings of the vessel's No. 2 'tween deck. The 1,850-pound pipes were stowed in tiers and these tiers were stacked to a height of approximately 6 to 8 feet. Following the completion of loading of the pipe, Miller was waiting in the center of the hatch to help off-load a forklift machine which had been used to stow the pipe when 39 pieces of pipe with a combined weight of 72,000 punds suddenly came out of the offshore wing stow and fell into the square of the hatch, crushing off one of Miller's arms and inflicting other serious injuries upon him.
 
 
 3
 The pivotal issue in the trial of this litigation became whether an inshore list of the ship caused the pipe to fall, or whether the falling pipe caused the ship to list. Miller claimed that the ship was negligently made unstable and unseaworthy by improper loading and distribution of potable water in the No. 4 tank and by improper distribution of cargo, an activity conducted by the ship's crew without the participation or assistance of the stevedore. Miller also claimed that the manner in which the pipe was stowed rendered the ADONIS unseaworthy and negligently unstable because the stow was not properly tiered, chocked, dunnaged and lashed. Royal Netherlands answered first that it was neither negligent nor was the ship unseaworthy, and alternatively, in the event that the jury might determine that the ship was unseaworthy, that such unseaworthiness was caused or brought into play by stevedore Strachan in breach of its implied warranty of workmanlike performance and, therefore, that it was entitled to indemnification from Strachan if it was required to pay damages based upon the ship's unseaworthiness. Strachan countered by asserting that all cargo operations were conducted in a safe and workmanlike manner in compliance with all safety regulations and that the ship's inshore list caused the pipe previously stowed to either break or jurmp over its chocking.
 
 
 4
 In answers to special interrogatories, the jury found that Royal Netherlands was negligent and that the ADONIS was unseaworthy, but that Royal Netherlands' negligence alone proximately caused Miller's injuries; that the stevedore, Strachan, did not breach its warranty of workmanlike performance to Royal Netherlands, and that Miller's damages were 200,000 dollars. The trial court entered judgment holding Royal Netherlands solely liable in the amount of 200,000 dollars. We affirm.
 
 
 5
 Royal Netherlands mounts its attack upon the judgment below on the grounds that (1) there is insufficient evidence upon which to warrant a verdict against the shipowner, (2) the jury's answers to the special interrogatories are fatally inconsistent and (3) the charge that Royal Netherlands could recover indemnity from Strachan only if the jury found that unseaworthiness of the ADONIS proximately caused Miller's injury was reversibly erroneous.
 
 
 6
 A review of the record convinces us that Royal Netherlands' sufficiency of the evidence complaint is without merit. In a lengthy trial all three parties developed extensive proof to construct and reinforce their contradictory conceptions of the events culminating in Miller's injuries. The contradictory proof developed classic jury issues as to cause and effect. Sufficient evidence was adduced to have sustained a verdict based on any party's major premise.[3]
 
 
 7
 Royal Netherlands' more substantial allegation relates to inconsistency in the jury's answers to the special verdict questions submitted pursuant to Rule 49(a) F.R.Civ.P. These questions and the jury's responses are set out in the margin.[4]
 
 
 8
 A finding by this court that a critical verdict was inconsistent with another would require a remand for a new trial (e.g., Royal Netherlands S.S. Co. v. Strachan Shipping Co., 362 F.2d 691 (5th Cir. 1966); Missouri Pacific R.R. Co. v. Salazar, 254 F.2d 847 (5th Cir. 1958)) since we could not speculate which inconsistent finding the jury intended to be controlling. However, the determination that an inconsistency exists must be made only after a concerted effort to reconcile every apparent inconsistency. As we stated in Griffin v. Matherne, 471 F.2d 911 (5th Cir. 1973): 'The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806-807 (1962). This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, . . ..' Id. at 915. 'We therefore must attempt to reconcile the jury's findings, by exegesis, if necessary, . . . before we are free to disregard the jury's verdict and remand the case for a new trial.' Gallick v. B & O R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963).
 
 
 9
 The jury found that the defendant Royal Netherlands was negligent (No. 1); that Royal Netherlands' negligence was a proximate cause of plaintiff's injuries (No. 2); that the ADONIS was unseaworthy (No. 3), but that the unseaworthiness of the vessel was not a proximate cause of plaintiff's injuries (No. 4); and that Strachan Shipping Company did not breach its warranty of workmanlike performance to Royal Netherlands (No. 8). Royal Netherlands contends that if the jury found that its negligence caused the ship to become unstable, they were legally bound to find that such instability constituted unseaworthiness. Therefore, Royal Netherlands continues, the jury's proximate cause answers to Nos. 2 and 4 were inconsistent since they would have determined thereby that the same condition both was and was not a proximate cause of Miller's injury.
 
 
 10
 While ordinarily liability based upon unseaworthiness is wholly distinct from liability based upon negligence, e.g., Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946), a negligent act or omission in the course of loading which causes a vessel to become unstable also creates an unseaworthy condition. See, e.g., Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971); Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). However, the sum of these legal theories does not lead to the conclusion that the jury's answers to interrogatories Nos. 2 and 4 must be inconsistent in this case.
 
 
 11
 It is possible to reconcile the answers by making the plausible assumption that the jury considered only the acts and omissions it thought caused the listing of the ship in answering the negligence question, and separately and distinctly applied its decision on unseaworthiness to the manner of the stowage of the pipe, i.e., they found that the ship's officers' negligence in failing to attend to the vessel's lateral stability and subsequent loading of water in the No. 4 starboard tank caused the ADONIS to list and that the manner of stowing the pipe created an unseaworthy condition. A review of the proof adduced, the conduct of the trial, the trial court's instructions and arguments of counsel demonstrate that this is a logical and probable way to reconciliation of the inconsistency of the answers in point of legal theory.
 
 
 12
 This pervasive, totality-of-circumstances overview was suggested by this court in McVey v. Phillips Petroleum Co., 288 F.2d 53 (5th Cir. 1961), and confirmed in Griffin v. Matherne, 471 F.2d 911 (5th Cir. 1973). In such a light, the jury could consistently have found that Royal Netherlands' own personnel were negligent in creating and failing to correct the starboard list and that the ship was unseaworthy because the pipe was improperly stowed, but that the list and not the improper stowage of the pipe proximately caused the pipe to fall.
 
 
 13
 The district court's lengthy instructions contained an explanation of the difference between negligence and unseaworthiness and cautioned the jury that if they found both negligence and unseaworthiness, the plaintiff could still recover only for one. Reason confirms that the jury could have found negligence on the part of the shipowner in creating and failing to correct the list (since it was a finding which the evidence clearly would permit) but, mindful of the court's instruction, simply did not pause to further consider whether the list also constituted an unseaworthy condition. In view of the mass of evidence and copious judicial instructions which this jury faced, such a failure to appreciate the need to apply this legal concept is not only plausible but understandable. Indeed, considering that the jury's function under Rule 49(a) is solely one of fact finding, a jury which had made a finding that the listing of the ship constituted negligence on the part of the shipowner, would not be bound to apply the legal consequences of such a finding, i.e., that negligence causing instability necessarily constituted an unseaworthy condition in the ship. This could be done by the court. Since this logical and probable rationalization of the jury's answers exists the verdict must be accepted. Even though equally persuasive possibilities that would produce reversal might be shown to exist, our inquiry ends here. Stacey v. Illinois Central R.R., 491 F.2d 542 (5th Cir. 1974); Griffin v. Matherne, supra.
 
 
 14
 Royal Netherlands further asserts that the trial court erred in instructing the jury that a shipowner may recover indemnity from an injured longshoreman's stevedore-employer only if the jury found that unseaworthiness of the vessel proximately caused the plaintiff's injury. Royal Netherlands contends that this charge suffers from the erroneous implication that Royal Netherlands could not recover indemnity if it was found liable for negligence.
 
 
 15
 Under our assumption (required to harmonize the jury's special verdict answers) that the jury determined that Royal Netherlands' negligence in creating and failing to correct the list was the sole proximate cause of Miller's injury, any further finding as to the stevedore's work, which must have been determined to have been unrelated to creation or correction of the list, would have been superfluous and irrelevant.
 
 
 16
 Royal Netherlands relies upon Weyerhaeuser S.S. Co. v. Nacirema, etc., Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958) and Grace Lines, Inc. v. Port Everglades Terminal Co., 324 F.2d 699 (5th Cir. 1963) for its contention that the judge's charge was erroneous. In Weyerhaeuser, the Supreme Court held, and in Grace Lines, this court held that the trial judge was in error in directing a verdict for the stevedore after a determination that the shipowner was liable only for negligence, and not for unseaworthiness. Royal Netherlands asserts that the effect of the court's charge in this case is the same, i.e., that Royal Netherlands could not recover indemnity if it was found liable for negligence.[5] The prejudicial defect, Royal Netherlands, continues, is made evident by the special verdicts that Royal Netherlands was guilty of negligence which proximately caused the accident and that no breach of warranty of workmanlike performance was committed by Strachan.
 
 
 17
 Neither Weyerhaeuser nor Grace Lines is apropos to the case presently before this court. In the case at bar the judge instructed the jury that Royal Netherlands' claim against Strachan must be predicated upon a finding that unseaworthiness of the vessel proximately caused plaintiff Miller's injuries, and not, as Royal Netherlands contends, that Royal Netherlands was precluded from recovering indemnity from Strachan if its liability was based on a finding of negligence. The concept of unseaworthiness did occupy a crucial place in Royal Netherlands' case against Strachan because a finding that Strachan breached its warranty of workmanlike performance, a prerequisite to recovery by Royal Netherlands, would necessarily render the vessel unseaworthy in a case such as this where Strachan's acts involved only the manner of olading and method of stowage of the pipes. E.g., Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971); Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). Thus the judge's charge that the jury must find that the unseaworthiness of the vessel was the proximate cause of Miller's injury was not erroneous when read in context with all other instructions.[6]
 
 
 18
 This situation is different from that in both Weyerhaeuser and Grace Lines. In those cases the trial judge dismissed the shipowner's third-party complaint without giving the jury an opportunity to determine if the stevedore's actions, alleged by the shipowner to have constituted a breach of warranty, would have sustined a recovery over by the shipowner in spite of its own negligence. In Weyerhaeuser and Grace Lines, a jury trial of the stevedore's culpability was required because the acts and omissions of both the shipowner and the stevedore surrounding the accidents were so physically intertwined that an initial finding of negligence against the shipowner would not preclude an additional finding that the stevedore's breach of its warranty of workmanlike performance also contributed to the injury. In the case before us today, however, consistency with our resolution of the jury's answers to the interrogatories compels a finding that the jury determined only the shipowner was responsible for the injury proximately resulting from its neglect in causing the vessel's starboard list.
 
 
 19
 Affirmed.
 
 
 
 [1]
 See Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 245 at 338 (1967); Ford Motor Co. v. Dallas Power & Light Co., 499 F.2d 400, 412 n. 19 (5th Cir. 1974); Simmons v. King, 478 F.2d 857, 862 n. 12 (5th Cir. 1973); Boyce v. Pi Kappa Alpha Holding Corp., 476 F.2d 447, 453 (5th Cir. 1973) (Brown, C.J., concurring); Wolfe v. Virusky, 470 F.2d 831, 837 (5th Cir. 1972) (Brown, C.J., concurring); Burns v. Anchor-Wate Co., 469 F.2d 730, 734 n. 8 (5th Cir. 1972); In re Double D. Dredging Co., Inc., 467 F.2d 468, 469 n. 3 (5th Cir. 1972); Little v. Bankers Life & Cas. Co., 426 F.2d 509, 512 (5th Cir. 1970) (Brown, C.J., concurring); Horne v. Georgia Southern & Florida Ry. Co., 421 F.2d 975, 980 (5th Cir. 1970) (Brown, C.J., concurring)
 
 
 [2]
 This type of tridimensional admiralty litigation is a vanishing breed. The 1972 amendments to the Longshoremen and Harbor Workers Act, 33 U.S.C. 901 et seq., effective November, 1972, now limit the longshoreman's right to sue a shipowner to claims based solely upon the shipowner's negligence, thereby abolishing the longshoreman's right to recovery under the doctrine of unseaworthiness and the shipowner's concomitant right to seck indemnification from the stevedore. 'The stevedore employer shall not be held liable to a shipowner for damages paid by the shipowner to longshoremen and any warranties to the contrary shall be void. 33 U.S.C.A. 905(b).' Julian v. Mitsui O.S.K. Lines, Ltd., 479 F.2d 432, 434 (5th Cir. 1973), accord, McCawley v. Ozeanosun Compania, Maritime, S.A., 505 F.2d 26 (5th Cir. 1974)
 
 
 [3]
 Evidence supporting plaintiff's negligence claim against Royal Netherlands revealed, inter alia: (1) that employees of both Royal Netherlands and Strachan observed the starboard list prior to the accident; (2) that both insufficient and inaccurate data was used by the captain in calculating the ship's stability prior to the accident; (3) that the captain, by his own admission, failed to calculate the port-starboard distribution of cargo prior to the accident; (4) the use of improper sounding procedures in checking liquid cargo and the failure to check list indicators prior to the accident; (5) that shortly before the accident, despite the presence of a greater than usual tonnage of liquids on the vessel's starboard side, water had been taken in the No. 4 starboard watertank; and (6) expert testimony by a consulting engineer and a naval architect, based upon the ADONIS' records of cargo and water distribution, which supported plaintiff's contention that Royal Netherlands negligently overloaded the starboard side of the ship resulting in an inshore list which precipitated the accident. The engineer testified that pipe stowed in the manner testified to by Strachan employees could only come out of stow if an improper list developed
 
 
 [4]
 SPECLAL VERDICT:
 
 
 [1]
 Was the defendant Royal Netherlands negligent?
 Yes. 2. If your answer to Interrogatory No. 1 is 'Yes,' was the defendant Royal Netherlands negligence a proximate cause of plaintiff's injury?
 Yes. 3. Was the M/V ADONIS unseaworthy?
 Yes. 4. If your answer to Interrogatory No. 3 is 'yes,' was the unseaworthiness of the vessel a proximate cause of plaintiff's injury?
 No. 5. If your answer to Interrogatories No. 2 and No. 4 is 'no,' or blank, do not answer the remaining questions; if your answer to either Interrogatory No. 2 or Interrogatory No. 4 is 'Yes', was plaintiff contributorily negligent?
 No. 6. If your answer to Interrogatory No. 5 is 'Yes', was that negligence a proximate cause of the injury?
 (No answer) 7. If your answer to Interrogatory No 6 is 'Yes', to what extent, expressed in percentage, did plaintiff's negligence contribute to his injury?
 (No answer) 8. Did Strachan Shipping Company breach its warrantly of workmanlike service to Royal Netherlands?
 No. 9. If your answer to Interrogatory No. 8 is 'Yes', was that breach a proximate cause of the accident?
 (No answer) 10. If your answer to Interrogatory No. 9 is 'Yes', did the conduct of Royal Netherlands prevent Strachan Shipping Company from carrying out its warranty of workmanlike service to Royal Netherlands?
 (No answer) 11. What amount do you find would fairly and adequately compensate plaintiff for his injury? (This must be the total amount of the damages without regard to the degree of plaintiff's negligence, if any. The Court apportions the damages).
 $200,000.
 
 
 [5]
 While we fully recognize that a shipowner's negligence is not a bar to recovery (e.g., T. Smith & Son, Inc. v. Skibs A/S Hassel, 362 F.2d 745 (5th Cir. 1966)) the substance of the court's instruction may not be construed as putting forward a contrary view
 
 
 [6]
 While it may have evoked a clearer response if the court had cast the charge and questions in terms of 'breach of warranty of workmanlike performance' rather than in 'unseaworthiness of the vessel' the record does not indicate that the wording employed caused confusion in the minds of the jurors