Elvis **GRIFFIN**, Plaintiff-Appellant,

v.

Victor **MATHERNE** and Otto Candies, Inc., et al., Defendants-Appellees.

No. 71–1418.

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1973.

Rehearing and Rehearing En Banc Denied March 12, 1973.

---

Kent A. Russell, New Orleans, La., for plaintiff-appellant.

George A. Frilot, III, John Poitevent, New Orleans, La., for National Lead Co., Baroid Div.

Charles E. Lugenbuhl, John M. Mc-Collam, Bernard J. Caillouet, New Orleans, La., for defendants-appellees.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal by the unsuccessful plaintiff is from a judgment entered on a special verdict of the jury consisting of the jury's answers to 28 questions submitted to it pursuant to Rule 49(a) Fed.R.Civ.P.[1] The issue is whether the jury's answers were so inconsistent with each other and with the judgment based on them that the District Court erred in entering judgment for defendants Matherne, Humble and National Lead. We conclude that judgment was properly entered for defendants Matherne and Humble, and as to them affirm, but was erroneously entered for National Lead, and as to that defendant we reverse and remand.

Plaintiff was captain of the tug DENVER, owned by Matherne and under charter to Humble. The DENVER was made up to an Humble barge, and both tug and barge were moored to an Hum-

---

1. This case is under Rule 49(a), not 49(b) Though the questions to the jury were called "interrogatories" rather than "questions" as in 49(a), no general verdict was requested of the jury or entered by it.

ble dock facility. Prior to plaintiff's injury employees of National Lead delivered to the barge sacks of finely textured drilling mud. There was evidence that National Lead's employees ripped the sacks and that dust from them combined with rain and wind to create a slippery condition across the decks of the barge and the DENVER. Plaintiff was injured when he slipped and fell while attempting to step up from the bulwark of the DENVER to the barge.

We set out in the margin the questions to the jury and the jury's answers, with the exception of those which have no bearing on this appeal.[2] The jury

2.                    SPECIAL VERDICT
"We, the jury in the above matter, unanimously find as follows:

|  | Interrogatory: | Unanimous Answers of the Jury: |
|---|---|---|
| 1. | Was Victor Matherne negligent? If you answer "Yes", then answer Question No. 2. | Yes _____ No X _____ |
| 2. | Was the negligence of Victor Matherne a proximate cause of plaintiff's injuries? | N/A<br>Yes _____ No _____ |
| 3. | Was Otto Candies, Inc. negligent? If you answer "Yes", then answer Question No. 4. | Yes _____ No X _____ |
| 4. | Was the negligence of Otto Candies, Inc. a proximate cause of plaintiff's injuries? | N/A<br>Yes _____ No _____ |
| 5. | Was this negligence active or merely passive and technical? | N/A<br>Active _____<br>Passive and Technical<br>_____ |
| 6. | Do you find that the plaintiff was injured before or after the National Lead truck first began to back onto the ramp and tore the sacks of mud? | Before _____ After X _____ |
| 6a. | Was National Lead Company negligent? If you answer "Yes", then answer Question No. 7. | Yes X _____ No _____ |
| 7. | Was the negligence of National Lead Company a proximate cause of plaintiff's injuries? | Yes _____ No X _____ |
| 8. | Was this negligence active or merely passive and technical? | Active _____<br>Passive and Technical<br>X |
| 9. | Was the Humble dock and loading ramp negligently designed or negligently constructed? | Yes _____ No X _____ |
| 10. | Was Humble negligent in any other way than as set forth in Question 9? | Yes _____ No X _____ |
| 11. | Was such negligence, if found to exist, active or only passive and technical? | N/A<br>Active _____<br>Passive and Technical<br>_____ |
| 11a. | If you find that, Victor Matherne was negligent, was such negligence active or only passive and technical? | N/A<br>Active _____<br>Passive and Technical<br>_____ |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

found that defendants Matherne and Humble were not negligent [numbers 1, 9 and 10]. It found that National Lead was negligent [number 6A], that National Lead failed to load the cargo of mud in a reasonably safe, proper and workmanlike manner [number 27], that National Lead's negligence was merely passive and technical rather than active [number 8], but that such negligence was not a proximate cause of plaintiff's injuries [number 7]. The jury also found that plaintiff was negligent [number 14] and that his negligence was a proximate cause of his injuries [number 15]. The jury determined the percentage that plaintiff was negligent "as compared to the other parties, if any," as 20.% [number 16].[3] It fixed the total dollar amount of damages sus-

14. Was plaintiff, Elvis Griffin, negligent under the facts of this case? If you answer "Yes", then answer Question No. 15.    Yes X____ No ____

15. Was the negligence of plaintiff a proximate cause of his injuries? If you answer "Yes", then answer Question No. 16.    Yes X____ No ____

16. At what percentage (1–99%) do you find that plaintiff was negligent as compared to the other parties, if any?    20%

17. What is the total dollar amount of damages sustained by plaintiff as the result of his alleged injuries?    $ 105,000.00

\* \* \* \* \* \*    \* \* \* \* \* \* \*

23. Was Humble Oil & Refining Company prejudiced by plaintiff's delay in filing suit against it?    Yes X____ No ____

24. Does plaintiff have a reasonable excuse for his delay in filing suit against Humble Oil & Refining?    Yes ____ No X____

\* \* \* \* \* \*    \* \* \* \* \* \* \*

25d. If you have found that the injury to Mr. Griffin was caused by negligence, was Victor Matherne privy to or did he have knowledge of that negligence?    N/A   Yes ____ No ____

\* \* \* \* \* \*    \* \* \* \* \* \* \*

27. Did National Lead load the cargo of drilling mud in a reasonably safe, proper and workmanlike manner?    Yes ____ No X____

28. Did Victor Matherne perform whatever duties it may have had, if any, with respect to loading the cargo of drilling mud in a reasonably safe, proper and workmanlike manner?    Yes X____ No ____ "

———◆———

3. Plaintiff had also sued Otto Candies, Inc., alleging it had arranged the charter of the DENVER. A directed verdict was granted for Candies at the close of plaintiff's case, and no appeal was taken therefrom. Presumably questions were submitted to the jury concerning Candies because of various claims for indemnity between defendants which are not part of this appeal.

At the same time partial directed verdicts were granted in favor of Humble and National Lead on all issues other than negligence. These rulings are not challenged.

tained by plaintiff as the result of his alleged injuries at $105,000 [number 17].

After the jury retired and before giving its answers, it returned to the courtroom. A colloquy then occurred in which the foreman stated, "there is some dissent here as to the damages, monetary damages that should be awarded to the plaintiff." Later in the exchange with the court the foreman asked whether the jury was supposed to put down a dollar figure in response to question 17, and said: "The rest of the jury does not know, they would like to know what the plaintiff's attorney is going to get, his cut, in awarding the dollars." The court instructed the jury that it was not to consider the amount of counsel's fees, if any, and that it should answer the questions as phrased and thereby inform the court of the amount of damages the plaintiff suffered.

■ Entry of judgment upon a jury's special verdict with written findings of fact is subject not only to precedential guidelines but to a constitutional restraint as well. The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806–807 (1962). This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict. R. B. Company v. Aetna Insurance Company, 299 F.2d 753, 760 (5th Cir. 1962). If on review of the district court's judgment we find that there is no view of the case which makes the jury's answers consistent and that

the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew. Missouri Pacific Ry. Co. v. Salazar, 254 F.2d 847, 849 (5th Cir. 1958); Wright v. Kroeger Corporation, 422 F.2d 176, 178–179 (5th Cir. 1970).

In McVey v. Phillips Petroleum Co., 288 F.2d 53 (5th Cir. 1961), a negligence case, the District Court had entered judgment for the defendant upon a Rule 49(a) special verdict in which the jury had found first that the two plaintiffs were not injured by the radiation accident alleged in the complaint, but had then filled in with dollars and cents figures the spaces on the verdict form next to questions calling for the sum of money which the jury determined would reasonably compensate the plaintiffs for injuries sustained as the proximate result of the accident sued on. The jury, after beginning its deliberation, had requested additional instructions as to whether it should answer the damages questions if it found, in answer to the prior questions concerning injury, that the plaintiffs had not been injured by the radiation accident alleged. The trial court reminded the jury that its function was to answer the questions on the evidence presented and not to determine the effects of any of its answers, and that, therefore, it should also answer the damages questions. The jury responded by answering the damages questions with dollar and cents entries, but attached to its answers a written "qualification and explanation" stating that any radiation damage suffered by plaintiffs was not caused by the accident the plaintiffs alleged but by accumulation of prior and past exposures not alleged as the basis for recovery. In disposing of the appeal this court first noted that a special verdict is to be construed in light of the surrounding circumstances, including the trial court's instructions. We held that the initial questions calling for jury determination of plaintiffs' in-

juries were unambiguous and that the negative answers thereto effectively negated an essential element of plaintiffs' negligence case, while the questions which elicited the monetary damages figures were ambiguous, as evidenced by the jury's unsolicited written explanation which pointed out the ambiguity and made clear that the jury did not want plaintiffs to recover for the accident alleged. We concluded that the District Court did not err in holding that the inconsistency in the jury's answers was more apparent than real because the jury's intent that plaintiffs not recover was clear. *McVey* illustrates that the court, in determining whether the jury has sufficiently expressed its intent on the factual issues properly before it under Rule 49(a) to warrant the entry of judgment, can consider the jury's expressions on matters extrinsic to its categorical answers to the questions submitted. *McVey's* emphasis on construing the jury's special verdict in light of the circumstances surrounding its formation and expression has been recognized and followed by *this court and others. Wright v. Kroeger Corp., supra* 422 F.2d at 178; *R. H. Baker & Co. v. Smith-Blair, Inc.*, 331 F.2d 506, 509 (9th Cir. 1964). See also *Martin v. Gulf States Utilities Co.*, 344 F.2d 34, 37 (5th Cir. 1965).

Applying the approach suggested by *McVey*, we we are not able to reconcile the jury's answers insofar as they relate to National Lead. By answer 6a National Lead was found to be at fault. By answer 8 the nature of National Lead's fault was described as passive rather than active. By number 16 the jury fixed the negligence of the "other parties" as compared to that of plaintiff to be 80% and nothing elsewhere tells us with certainty that National Lead was

excluded from the phrase "other parties." Number 17, fixing the damages, and the colloquy of the jury with the court concerning the share to go to plaintiff's attorney, considered together, evidence an intent on the part of the jury that some defendant, one or more, was to be liable to plaintiff in dollars and cents. In *McVey* we looked to the written "qualification and explanation" from the jury as an aid to its intent, and that communication pointed toward nonliability. Here we look to another source extrinsic to the verdict itself—the colloquy between jury and judge—and it points toward an intent that there be liability.

■ Since only National Lead was found to be guilty of fault [answers 6a and 8] while Humble and Matherne were found to be free from fault [answers 1, 9 and 10], the finger of liability points at National Lead.[4] Yet by answer 7 the jury found National Lead's negligence not a proximate cause of plaintiff's injury. Nothing occurring in the trial, in the court's instructions, or in the arguments made to us on this appeal, enables us to make the jury's inconsistent answers into a consistent expression of intent that National Lead is either liable or excluded from liability. Thus we reject the contention of plaintiff that the court was required to enter judgment in his favor, and, at the same time reject as improperly entered the judgment discharging National Lead.

On the other hand, we are not able to say that the District Court erred in entering judgment for Matherne and Humble. The jury found each of these two defendants to be without fault [answers 1, 9 and 10] and, therefore, did not reach the issue of proximate causation as to either of them. The only arguable inconsistency with respect to these two

---

4. In this connection, it is noteworthy that by its answer to question 27, one of a series of questions which the court had instructed related to claims among the de-

fendants themselves, the jury found that National Lead did not load the cargo of mud in a reasonable, safe, proper and workmanlike manner.

defendants is between the findings that they were free from fault and the finding [answer 16] that plaintiff was 20% negligent "as compared to the other parties" and the entry of the dollar and cents figure in answer 17. Insofar as it might disclose which defendant, if any, was to be fastened with liability for the damages, the answer to number 17 is neutral. While the plural term "parties" in answer 16 arguably embraced more than one defendant, it is reasonable to conclude that the court, in phrasing question 16, used "parties" as a simple and convenient means of referring generically to any one or more of the defendants found to be negligent, and that the jury responded thereto. Contributory negligence by plaintiff would reduce his recovery by the percentage stated without regard to whether liability was on one defendant or more than one. The use by the court of the plural form, explicable as a semantic device, does not seem to us to create an irreconcilable inconsistency with the specific answers finding Matherne and Humble free from fault. The jury's dollar and cents damage figure, plus its colloquy with the court, indicate an intent that some one or more entities was to pay, and, as already discussed, it can rationally be inferred that "some one or more" included National Lead, which was found to have breached its duties to plaintiff. But it would be far less rational to infer that included in the entity or entities to pay damages are the two defendants found to have been free from fault.[5]

We find unpersuasive the argument of defendants that question 16 and the answer thereto were intended by the jury to attribute to the natural forces of wind and rain all causal responsibility for the accident not attributed to plaintiff, rather than to attribute it to one or more of the defendants. Nothing in question 16 suggests such an interpretation. The tenor is to the contrary, since the question is phrased in terms of "negligence" and of "other parties," and the forces of wind and rain are not within either of those terms. We reject the argument of defendants that the dollar and cents figure entered in response to the damage question reflects only the impression of the jury that it was required to make an entry of some kind to each one of the questions. In 13 places the jury entered "N/A" [not applicable] to questions which, because of some earlier finding(s), it logically did not need to categorically answer. Nor was the jury's conversation with the court concerning damages an abstraction without meaning in determining what the jury intended. Rather it can be construed to reflect the actuality known to every experienced personal injury lawyer of the frequent, though improper, concern of the jury over the net amount of dollars which plaintiff will be able to put in his pocket from the jury's award.

■ The appellees would have us deny review of the inconsistency of the verdict because the plaintiff did not, prior to the jury's being excused, move to have the questions resubmitted to the jury for the purpose of its attempting to return consistent answers. For several reasons we reject this contention. We pretermit the question of whether there could have been a valid resubmission to the jury.[6] When the verdict was read

---

5. Our disposition of the case makes it unnecessary for us to consider the effect of answers 23 and 24 that Humble was prejudiced by plaintiff's delay in filing suit against it and that plaintiff had no reasonable excuse for the delay.

6. Rule 49(a) unlike 49(b) does not provide for resubmission. Under Rule 49(b) the

jury returns answers to special interrogatories and a general verdict. To enable it to perform this dual function, the former primarily a factual undertaking and the latter an application of the law to the facts, the jury must be fully charged, and the rule itself provides for reconsideration by the jury or for new trial if there is in-

and the jury polled no objections were stated. The court announced that it was discharging the jury, and the members left the courtroom. The trial judge announced that he would not enter a judgment for ten days to allow plaintiff to file post-trial motions. Plaintiff's counsel inquired whether this was the proper time to make a motion to set aside the verdict, and the trial judge replied that he thought the proper time was after judgment was entered, but he would be glad for plaintiff to make an oral motion if he wished. Plaintiff then orally moved to set aside the verdict on the ground of inconsistency, and the court announced that the motion was filed but that he would enter judgment later, at which time the ten-day period for filing post-judgment motions would run. The court also invited briefs from the parties.

Thus, promptly after verdict the plaintiff made known his position, and, if resubmission was considered to be both allowable and appropriate, the jury might have been reassembled. Plaintiff filed a brief in support of his motion, arguing the inconsistency point, and the motion was denied. Under these circumstances plaintiff did not lose his right to appellate review of the inconsistency of the verdict. Halprin v. Mora, 231 F.2d 197 (3rd Cir. 1956), is not contrary to our conclusion. That case fell under Rule 49(b), which provides for resubmission. See footnote 6, *supra*. Also one of the grounds for the decision in *Halprin* was that plaintiff failed to press the inconsistency on motion for new trial. The instant plaintiff pressed the matter immediately after the jury cleared the courtroom.

Affirmed as to Matherne and Humble. Reversed and remanded as to National Lead.

consistency between one or more special answers and the general verdict. Rule 49(a), under which the jury's function is solely fact finding with only such instruction as necessary for it to discharge that function, does not provide for jury reconsideration of inconsistent answers.

For a discussion of the fundamental difference between 49(a) and 49(b), see the concurring opinion of Chief Judge Brown in Wolfe v. Virusky, 470 F.2d 831 (5th Cir., 1972).