The AQUACHEM COMPANY, INC., a
Florida Corporation,
Plaintiff-Appellant,

v.

OLIN CORPORATION, a Virginia
Corporation, Defendant-Appellee.

No. 82–5327.

United States Court of Appeals,
Eleventh Circuit.

March 3, 1983.

Gaston, Snow & Ely Barrett, Hall & Swann, Robert D. Canty, John M. Conley, Steven J. Mastrovich, Coral Gables, Fla. and Boston, Mass., for plaintiff-appellant.

Neal R. Stoll (Richard Bemporad, Thomas M. Lahiff, Jr., Andrew E. Reisman, on the brief) Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant-appellee.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Aquachem Company, Inc. is a Florida corporation engaged in the manufacture and distribution of swimming pool chemicals and equipment. Olin Corporation is a Virginia corporation and a diversified producer and distributor of chemicals, which include swimming pool chemicals. In the early 1970s Aquachem began distributing Olin's product HTH to swimming pool dealers. HTH is Olin's brand of calcium hypochlorite (cal hypo), a swimming pool sanitizing agent. Cal hypo accounts for about 60% of pool sanitizing chemical sales in the southeastern United States, and HTH accounts for 90% of all cal hypo sales. In 1979 Olin decided to terminate Aquachem as a distributor of HTH. This lawsuit followed.

Under an oral agreement with Olin, Aquachem could sell HTH to its customers from its warehouse, through referral sales, or through third-party sales. The contract for a warehouse sale was between Aquachem and the customer, with Aquachem collecting the invoice and setting the sale price. Referral sales involved a contract between Olin and the customer with delivery from Olin and a sales commission for Aquachem. A third-party sale contract was between Aquachem and the customer, with Aquachem setting the price and collecting the invoice, but with delivery from Olin. Third-party shipments from Olin are subject to the following contractual conditions: "All third party accounts must be submitted to the Olin HTH Marketing Department for prior approval. Olin has the right to refuse shipment to any third party account without cause."

In 1973 Aquachem began producing and distributing another pool sanitizer, chlorinated isocyanurate (iso). During the mid-1970s Olin began to market isos but never offered Aquachem the opportunity to distribute PACE, Olin's brand of iso. Between 1976 and 1977 the relationship between Olin and Aquachem deteriorated. In late 1977 Olin switched Woolco, one of Aquachem's largest customers, from third-party sales to referral sales. During 1978 Olin's salesmen began to deal with Woolco directly. In the fall of 1978 Olin took over all HTH sales to K-Mart, another major Aquachem customer. And in the fall of 1979 Olin terminated Aquachem as a distributor of HTH. Soon after it was notified of its termination, Aquachem began looking for an alternative source of supply and sought to fill an outstanding order from Albertson's, an important customer.

In December 1979, Aquachem submitted a purchase order for one shipment of HTH to Thompson-Hayward, a distributor that had agreed to sell the shipment to Aquachem at the dealer price—the price Thompson-Hayward charged its other customers.

Aquachem's order requested third-party delivery by Olin directly to Aquachem. Thompson-Hayward submitted an order for the HTH to Olin, but the order was subject to Olin's restrictions on third-party shipments. Olin informed Thompson-Hayward that it refused to ship the order, and Thompson-Hayward conveyed Olin's decision to Aquachem along with a copy of Olin's terms of sale. Aquachem has presented no evidence that it attempted to purchase HTH from Thompson-Hayward's stock or that Olin has made any attempt to induce Thompson-Hayward, or any other HTH distributor, to stop selling HTH to Aquachem out of its own stock.

Aquachem filed this action in a Florida state court, alleging violations of the Florida Antitrust Act of 1980, Fla.Stat.Ann. § 542.15, et seq., and tortious interference with contractual relations. Olin removed the case to the United States District Court for the Southern District of Florida relying on diversity jurisdiction. Aquachem amended its complaint to include claims under the federal antitrust laws, and Olin filed a counterclaim for Aquachem's refusal to pay for goods sold and delivered. The district court granted summary judgment on the counterclaim, awarding Olin $52,145.73 plus interest.

The case was tried before a jury on several theories of liability. Aquachem alleged: (a) that, when Olin appropriated its customers and eventually terminated Aquachem, Olin violated Section 2 of the Sherman Act, 15 U.S.C.A. § 2, by monopolizing, attempting to monopolize and conspiring to monopolize the distribution of swimming pool chemicals in a stipulated geographic market;[1] (b) that Olin and Thompson-Hayward combined to restrain trade, in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1, by refusing to make a third-party shipment of HTH to Aquachem; (c) that Olin's activities also violated the Florida Antitrust Act of 1980, Fla.Stat.Ann. § 542.15, et seq., which employs standards identical to those

1. The parties agreed that for purposes of antitrust analysis the southeastern United States is the relevant geographic market.

in Sections 1 and 2 of the Sherman Act; (d) that Olin tortiously interfered with Aquachem's contractual relations with Thompson-Hayward and/or Aquachem's former customers; and (e) that Aquachem had been wrongfully terminated, without notice or cause, in violation of Florida common law. At the close of the plaintiff's evidence the district court directed a verdict in favor of Olin on Aquachem's claim under Section 1 of the Sherman Act, and at the close of all the evidence the court directed a verdict in Olin's favor on the claim under Section 2 for conspiracy to monopolize. The court denied motions by both parties for directed verdicts on the remaining claims.

The jury rendered a special verdict pursuant to Fed.R.Civ.P. 49(a). It found in favor of Olin on the remaining Section 2 claims, concluding that Olin neither possessed nor posed a threat of acquiring monopoly power. As to the claim for tortious interference the jury found "the existence of an ongoing business relationship between plaintiff and Thompson-Hayward and/or plaintiff's former customers," and that "the defendant intentionally and unjustifiably interfered with that relationship," but with respect to "the actual dollar amount of damage to plaintiff," the jury entered a zero with a horizontal line through it ( ). This answer was published in open court by the clerk of the court as "nothing." None of the jury members disputed this as their answer, Aquachem did not object to the verdict, and it declined the district court's offer to poll the jury. For Aquachem's claim of inadequate notice of termination the jury awarded $700,000.00 in damages.

Olin moved for JNOV or, in the alternative, for a new trial on all aspects of Aquachem's claim of inadequate notice of termination. Olin's motion was premised on Aquachem's failure to offer proof of damages from inadequate notice. Aquachem filed a motion for entry of judgment requesting that judgment for $700,000.00 be entered for both tortious interference and the inadequate notice claims. It asserted that the jury had made a clerical error in completing the special verdict form. Aquachem argued that the true intent of the jury was to find liability on both common law claims and make a single damage award totaling $700,000.00. It requested in the alternative that, if the court should refuse to enter judgment in Aquachem's favor on both common law claims, it grant a retrial of both claims solely on the issue of damages.

The district court's Order on post trial motions rejected Aquachem's claim that the jury had made a clerical error. The court found that "the plaintiff proved and the jury awarded, no damages on the tortious interference with contractual relations claim." The court entered judgment for Olin on the claim of tortious interference because under Florida law one of the elements of the tort is that damage to the plaintiff result. See Doft & Co. v. Home Federal Savings and Loan Ass'n, 592 F.2d 1361, 1363 (5th Cir.1979). The court also denied Aquachem's request for a new trial as to damages because "it is clear from the jury's answer to special verdict question 8(b) that the jury did not intend to award damages to plaintiff on its claim for tortious interference with contractual relations." Olin's motion for JNOV on the claim of inadequate notice of termination was granted because Aquachem "presented no evidence of any outlays of time, money and labor attributable to the distribution of Olin products or that such outlays, if any, were not recouped." See, e.g., Ballard v. Krause, 248 So.2d 233, 234–35 (Fla.Dist.Ct. App.1971) (plaintiff must present proof of damages); Ag-Chem Equipment Co. v. Hahn, Inc., 480 F.2d 482, 486–87 (8th Cir. 1973) (action for inadequate notice of termination enables distributor to recoup expenditures). Finally, the court conditionally granted Olin's motion for a new trial on all aspects of the claim of inadequate notice of termination in the event that the judgment would be vacated or reversed.

Aquachem challenges the district court's entry of a directed verdict on its claim under Section 1 of the Sherman Act, and it argues that the court's refusal to reallocate the damages or grant a new trial was an abuse of discretion. We disagree and affirm.

 The district court's grant of a directed verdict must be affirmed if a review of the entire record does not reveal substantial evidence opposed to the motion. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969). To create a triable issue under Section 1 of the Sherman Act, Aquachem had to show concerted anticompetitive conduct by a plurality of actors, *H & B Equipment Co., Inc. v. International Harvester,* 577 F.2d 239, 243 (5th Cir.1978), in other words, a "meeting of the minds in an unlawful arrangement." *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). The district court directed a verdict on the Section 1 claim because Aquachem failed to introduce any evidence that Thompson-Hayward combined with Olin in an unlawful arrangement. Thompson-Hayward placed Aquachem's order with Olin and the order was unilaterally refused. As found by the district court, all Thompson-Hayward did was "simply report the decision of Olin not to sell." Thompson-Hayward could do no more because it "couldn't go up [to Olin] and steal the HTH." We agree with the district court's holding that Olin's unilateral refusal to deal with Aquachem was not a violation under Section 1. *See United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Greyhound Rent-A-Car, Inc. v. Pensacola,* 676 F.2d 1380, 1383 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

 A district court may, within its sound discretion, amend a special verdict after it is rendered to make it conform to the jury's obvious, but unexpressed intention. A clearly erroneous assignment of awards by a jury on different claims is like a clerical error under Fed.R.Civ.P. 60(a) that the court can correct without reexamining the facts upon which the verdict was based. *G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945, 963–64 (5th Cir.1981). Aquachem argues that the jury's clear intent was to award a single quantum of damages on both common law theories, so the judge should have reallocated the damage award. We, however, find nothing in the record or in the special verdict to suggest that the jury clearly intended to make a single damage award.[2] Denial of Aquachem's motion to reallocate damages was therefore proper.

 It was also proper for the district judge to grant JNOV on the claim of inadequate notice of termination, thereby reversing the jury's damage award of $700,000.00. The judge had charged the jury that the measure of damages for failure to give reasonable notice is the terminated distributor's outlay, if any, of time, money, and labor expended on the distributorship to the extent that such investments had not been recouped at the time of termination. Since Aquachem had presented no evidence that any outlays of time, money or labor were attributable to the distribution of Olin's products or that such outlays, if any, were not recouped, the jury's verdict had no basis and JNOV was justified. *See Ag-Chem Equipment Co. v. Hahn, Inc., supra,* 480 F.2d at 486–87.

Because the jury found that an ongoing business relationship existed "between plaintiff and Thompson-Hayward and/or plaintiff's former customers," and that "the defendant intentionally and unjustifiably interfered with that relationship," Aquachem argues that, in light of the evidence presented, it was logically impossible for the jury to have concluded that Aquachem was not damaged. Aquachem insists that a new trial should have been granted.

**2.** The cases relied on by Aquachem are unusual and inapposite. In *Smith v. Philadelphia Transportation Co.,* 173 F.2d 721 (3d Cir.1949), the damage awards were obviously reversed because the award for the first claim corresponded to the amount requested for the second claim and vice-versa. In *G.A. Thompson, supra,* the jury was instructed that each of the four defendants could be held jointly and severally liable for $123,825.89. The jury clearly misunderstood the instructions, assessing damages of $30,956 against each defendant—a one-quarter share. In neither case did the trial court have to reexamine the record and draw inferences from the evidence as to what the jury could have found. In this case such a reexamination, prohibited by the Seventh Amendment, would be required.

The trial court's denial of a motion for new trial may only be reversed for a clear abuse of discretion. *Stewart v. Texas & Pacific Railway Company,* 278 F.2d 676, 678 (5th Cir.1960). But reversal for a new trial is required if one critical answer in a special verdict is inconsistent with another. *Miller v. Royal Netherlands Steamship Company,* 508 F.2d 1103, 1106 (5th Cir.1975). However, the Seventh Amendment demands that, if there is a view of the case which makes the jury's answers consistent, this Court must adopt that view. *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973). It does not matter whether Aquachem can suggest equally plausible reasons for the verdict that would require reversal. *Miller v. Royal Netherlands, supra,* 508 F.2d at 1108. The test to be applied in reconciling apparent conflicts between the jury's answers is "whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict." *Griffin, supra,* 471 F.2d at 915.

There are several reasonable explanations for the jury's finding that Aquachem was not damaged by Olin's purported tortious interference. The jury was presented with evidence that, after termination of its relationship with Olin, Aquachem shifted its resources to other products, attaining record sales and earnings. And although Aquachem implies that the jury found tortious interference with respect to its relations with K-Mart and Woolco, that is not necessarily so. The interrogatories answered by the jury did not indicate whether the unjustifiable interference applied to Aquachem's relations with its former customers or whether the interference applied only to Aquachem's relationship with Thompson-Hayward.[3] If the jury found unjustifiable interference only with

respect to Thompson-Hayward the jury could have concluded that Aquachem filled its outstanding orders through another source. At trial, Aquachem never identified a single sale lost as a result of Olin's purported tortious interference. Moreover, if Aquachem had been able to purchase the HTH from Thompson-Hayward at the dealer price, and then sold the order at the dealer price, it would not have made a profit. There is a logical and probable explanation for the jury's answers, so the verdict must be accepted. *Miller v. Royal Netherlands, supra,* 508 F.2d at 1108.

AFFIRMED.

---

3. It would have been better practice for Aquachem to have requested that the trial court submit an additional interrogatory to the jury in order to clarify its verdict. *See Morrison v. Frito-Lay, Inc.,* 546 F.2d 154, 161 (5th Cir.1977).