IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2007

Charles R. Fulbruge III
Clerk

No. 06-30758

PAUL MAZANT, Individually and on Behalf of Kendall Mazant;
JEANNETTE MAZANT, Individually and on Behalf of Kendall Mazant

Plaintiffs - Appellees

v.

VISIONEERING INC.

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:04-CV-57

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Visioneering, Inc. appeals the district court's judgment in favor of plaintiffs-appellees on their Louisiana products liability action, arguing (1) that the district court abused its discretion in reconciling the jury's special verdicts and (2) in the alternative, that the jury's reconciled verdict is unsupported by the evidence presented at trial. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellee Paul Mazant and Jeannette Mazant, individually and on behalf of Kendall Mazant, filed a personal injury products liability action against Defendant-appellant Visioneering, Inc. ("Visioneering") under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. ANN. §§ 9:2800.51-.59, in Louisiana state court. After removal to federal court, the case proceeded to trial.

Paul Mazant, a production supervisor for Lockheed Martin Manned Space Systems ("Lockheed"), was injured at work when the scaffolding on which he was standing partially collapsed. Visioneering designed and manufactured the scaffolding, referred to as the Unit 5 intertank platform, in accordance with a Statement of Work ("SOW") that Lockheed provided to Visioneering. The Unit 5 intertank platform was one of five intertank platforms that Visioneering manufactured at Lockheed's direction. Lockheed planned to use these intertank platforms in constructing the external tanks of the space shuttle. The previous intertank platforms used by Lockheed inside the fuel tank were aluminum platforms. However, the new intertank platforms were to be designed using composite materials for the decking of the platform, thus reducing the weight and quantity of individual parts. Lockheed sent out a Request for Proposal, requesting a bid for the design and fabrication of five intertank platforms, and Visioneering was awarded the contract.

Under the contract, Visioneering was to adhere to the SOW, the document produced by Lockheed that outlined the design criteria and responsibilities of the parties for the intertank platform project. Lockheed directed Visioneering to base its design of the new intertank platforms on the drawings of the old aluminum intertank platforms. Visioneering drafted the engineering drawings for the new intertank platforms, and Lockheed participated by providing recommendations and specifications on different aspects of the design. The

contract also required Lockheed and Visioneering to document any changes to the designs, drawings, or specifications of the intertank platforms in the SOW or through a Change Order. During the course of the intertank platform project, there were five separate revisions to the original SOW, all of which reflected changes in the responsibilities of the parties. Change Order No. 1 involved Lockheed's authorization of Visioneering to perform a proof-load test on the Unit 1 intertank platform as part of its design. After approval of the cost, the SOW was revised to reflect the change in the contract regarding Visioneering's responsibility to perform the proof-load test. A proof-load test focuses on the overall capacity of the intertank platform to support the weight of multiple workers on multiple levels, simultaneously, whereas a point-load test analyzes each point of the three levels of an intertank platform to determine the weight bearing capabilities of all areas of those three levels. Plaintiffs' expert metallurgist, Dr. Thomas Shelton, provided uncontested testimony that had a point-load test been performed on the Unit 5 intertank platform, Paul Mazant's accident would not have occurred. Dr. Shelton testified that the point-load test should have been performed as part of the design of the intertank platforms and if it had been performed, Visioneering would have discovered that the failed panel on the Unit 5 intertank platform had insufficient strength to support the required loads.

Visioneering's corporate representative, Kevin Yakes, whose employment responsibilities included the intertank platform project, identified communications in which he recommended the point-load test be performed on the intertank platforms. On December 19, 2001, Yakes sent an email to a business Visioneering used for outsourcing design work that documented his concerns that point-load testing should be discussed as part of the design concept of the intertank platforms. Yakes also recommended to Lockheed, during the design phase of the platforms, that the point-load test be performed. Yakes

testified that he verbally recommended the test to Lockheed. Yakes also emailed Lockheed on May 23, 2002 stating: "I recommend an FEA (point load of say 250 lbs.) to make sure all is good. Need your direction to quote that as part of the SOW." In response, Larry Cooper of Lockheed forwarded an email simply stating "Agree" in reference to the point-load test recommendation. Cooper testified that this response to the Yake's email recommendation for point-load testing was an agreement by Lockheed to perform the testing, prompting Visioneering to submit a Request for Action ("RFA") and a cost quote to Lockheed. Visioneering failed to submit either the RFA or cost quote for point-load testing. In fact, Yakes could not recall any follow-up actions he took with regard to this email exchange, and prior to Paul Mazant's accident, neither Lockheed nor Visioneering had performed the point-load test.

At trial, Paul Mazant argued that his injury was the result of an unreasonably dangerous design defect in the Unit 5 intertank platform that Visioneering manufactured. Specifically, Visioneering's defective design of the Unit 5 intertank platform included the use of cantilevered decking panels that were inadequately supported and the failure to conduct the proper point-load testing that would have detected this inadequate support. Visioneering argued that the design specifications, and therefore, any defect regarding the design of the Unit 5 intertank platform, were solely in Lockheed's control by the SOW. Moreover, Visioneering argued that Lockheed's failure to conduct a point-load test on the Unit 5 intertank platform was an intervening and superceding cause of Paul Mazant's injuries, precluding the plaintiffs' recovery from Visioneering.

The jury returned a special verdict finding that the Unit 5 intertank platform involved in Paul Mazant's injury was unreasonably dangerous by design but not unreasonably dangerous in either composition or construction. Additionally, the jury found that "the failure to perform point[-]load testing on [the] Unit 5 intertank platform prior to [the] accident was a superceding or

4

intervening cause of the existence of any unreasonably dangerous condition of the Unit 5 intertank platform that proximately caused plaintiffs' injuries," and that both Visioneering and Lockheed failed to perform the point-load test. Finally, the jury apportioned fault, finding Visioneering 30% at fault for causing Paul Mazant's injuries and Lockheed 70% at fault.

In briefing filed with the court after the jury's verdict, the plaintiffs contended that the court should enter judgment in their favor and against Visioneering for 30% of the total damages awarded. Visioneering filed a proposed judgment and contended that the jury's finding of an intervening cause necessitated a complete verdict in its favor. The district court entered judgment in favor of the plaintiffs and against Visioneering in the amount of $297,404.40, or 30% of the total damage award of $931,348.00, plus interest. The court upheld the jury's apportionment of fault, stating:

> [Visioneering] considered point-load testing necessary and brought it to Lockheed Martin's attention. Even with the ambiguities surrounding whether Lockheed Martin subsequently authorized such testing, given the potential harm that could arise from a panel section giving away and that [Visioneering] was using a new material in construction based on a former design, the jury found, based on evidence, that [Visioneering] should have performed the testing as part of the design. Further the jury's verdict is based on evidence that point-load testing was unreasonably delayed due to disagreement and confusion between [Visioneering] and Lockheed concerning authorization. The jury's verdict reasonably considered [Visioneering] and Lockheed Martin's conduct to be significant and comparative roles in causing this accident. Accordingly, the judgment will be entered based on the jury's findings.

R. 881-82 (emphasis added).

Visioneering filed a timely notice of appeal. The district court granted Visioneering's unopposed motion to stay the enforcement of the judgment, pending appeal.

## II. DISCUSSION

### A. Whether Jury's Special Verdicts May Be Reconciled

Visioneering argues that a finding by the jury that there was a superceding or intervening cause of the accident, namely the failure to perform point-load testing on the Unit 5 intertank platform, conflicts with the jury's finding that Visioneering was 30% at fault and precludes entry of judgment against Visioneering.

Visioneering also contends that if the jury's 30% fault allocation is premised on Visioneering's failure to perform the point-load test, that failure is based on a theory of negligence, which is precluded by the LPLA. Specifically, since the LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products, liability based on a negligence claim is not permitted. Visioneering notes a passage in the district court's opinion as support for its proposition. The court stated, "Defendant was found negligent for failing to perform point-load testing of the product before releasing it into use."

"We are required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible." Ellis v. Weasler Eng'g, Inc., 258 F.3d 326, 343 (5th Cir. 2001) (quoting Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962); Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir. 1973)). Thus, "courts 'must attempt to reconcile the jury's findings, by exegesis, if necessary, before we are free to disregard the jury's verdict.'" Id. (citing Gallick v. Balt. & Ohio R.R., 372 U.S. 108, 119 (1963); Mercer v. Long Mfg. N.C., Inc., 665 F.2d 61, 65 (5th Cir. 1982)).

> We must ask whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict. Only if there is no view of the case that will make the jury's answers consistent may we set aside its decision.

Id. (citing Snyder v. Trepagnier, 142 F.3d 791, 800 (5th Cir. 1998) (citations omitted)).

"In considering whether the seemingly inconsistent verdicts may be reconciled, the court must view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency." Id. (citing Hiltgen v. Sumrall, 47 F.3d 695, 701 (5th Cir. 1995)). In addition, "the special verdicts 'must be construed in light of the surrounding circumstances' of the case." Id. (quoting Wright v. Kroeger Corp., 422 F.2d 176, 178 (5th Cir. 1970); Davis v. W. Cmty. Hosp., 755 F.2d 455, 465 (5th Cir. 1985)). The "constitutional mandate to create consistency requires that we look beyond the face of the interrogatories to the court's instructions as well." Carr v. Wal-Mart Stores, Inc., 312 F.3d 667, 672 (5th Cir. 2002) (quoting Alverez v. J. Ray McDermott & Co., 674 F.2d 1037, 1040 (5th Cir. 1982)). Overall, the district court has wide discretion in determining whether the jury's answers are clear. Id. (citing Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir. 1988)).

In this case, the district court's jury instructions, to which neither party objected at trial, included the following on superceding and intervening causes:

> A manufacturer is not liable for damages brought about by a later intervention of a separate, independent, superseding cause. Where an accident results from two negligent acts, one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause.

R. 792 (emphasis added). However, the interrogatories the jury answered regarding superceding and intervening causes were phrased differently, and once again, neither party objected to their submission during trial.[1] In interrogatory 5,[2] the jury was asked whether the failure to perform the point-load test was a superceding or intervening cause of Paul Mazant's accident, to which the jury answered yes. Immediately following this question, in interrogatory 5(a), the jury was asked whether point-load testing was a failure by either or both Visioneering and Lockheed, and the jury answered both. The combination of interrogatory 5 and 5(a) left open the possibility for the jury to find that the failure of the point-load test by Lockheed was an intervening cause of the accident but not a separate, independent, superseding cause that would vitiate Visioneering's liability, specifically because Visioneering was also at fault for failing to conduct the same point-load test.

Moreover, viewing the evidence in the light most favorable to upholding the judgment by reconciling the verdicts, we conclude that the jury reasonably could have found that Visioneering was at fault for failing to conduct the point-load test on the Unit 5 intertank platform. A reasonable jury could have determined from the evidence in the record that Visioneering shouldered part of the design responsibility for the intertank platform project, and this responsibility included the performance of the point-load test. Visioneering bid on Lockheed's contract to design and fabricate the intertank platform units.

---

[1] Visioneering merely commented on interrogatory 5, which it self-authored, but did not specifically object to the language used.

[2] Interrogatory 5 asked:
> Did [Visioneering] prove by a preponderance of the evidence that the failure to perform pointload testing on Unit 5 intertank platform prior to Paul Mazant's accident was a superceding or intervening cause of the existence of any unreasonably dangerous condition of the Unit 5 intertank platform that proximately caused plaintiffs' injuries?

Visioneering was directed to base its design of the new intertank platforms on the drawings of the old aluminum intertank platforms. Even though Lockheed participated by providing recommendations and specifications on different aspects of the design, Visioneering drafted the engineering drawings for the new intertank platforms.

Plaintiffs' expert Dr. Shelton provided testimony that the necessary point-load test should have been conducted by Visioneering during the design of the intertank platforms. We note from the record that the design process of the intertank platforms was, to some extent, an ongoing process; modifications of the design occurred over a considerable period of time. Kevin Yakes, Visioneering's corporate representative whose responsibilities included Lockheed's intertank platform project, suggested including point-load testing in the design of the intertank platforms in two separate emails. Yakes sent an email concerning point-load testing to a business Visioneering used for outsourcing some of its design work. He sent another email to Lockheed recommending that point-load testing be part of the design phase of the intertank platform project. Lockheed presented evidence that it agreed to the recommendation for point-load testing of the intertank platforms via email but that Visioneering failed to submit the RFA and cost quote that were required for authorization of the point-load test.

Finally, although there was undisputed evidence that the SOW did not provide for point-load testing, some evidence was presented that Visioneering may not have had to rigidly comply with Lockheed's SOW. For example, at one point Visioneering ordered its composite supplier to strengthen one of the intertank platforms, an order which was not outlined in the SOW or any revisions thereof. On this evidence, the jury could reasonably have concluded that Visioneering should have performed the point-load test as part of the design of the Unit 5 intertank platform, and that the failure to perform the point-load test resulted in a design defect under the LPLA that proximately caused Paul

Mazant's injuries. Since the jury's special verdicts may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or answers prescribed by the judge may have produced an apparent conflict, we are not free to disregard the verdict. See Ellis, 258 F.3d at 343.

The foregoing reconciliation of the jury's verdict is also consistent with Louisiana law. Under the LPLA, a manufacturer is liable only if the claimants establish that the product defect proximately caused the plaintiff's damage. LA. REV. STAT. ANN. § 9:2800.54(A); Wheat v. Pfizer, Inc., 31 F.3d 340, 342 (5th Cir. 1994). Proximate cause demands more than a cause-in-fact relationship; there must also be a substantial connection between the defendant's actions and the plaintiff's damages. See Wheat, 31 F.3d at 342 (explaining that "[a] plaintiff must prove not only causation in fact, but also that the product defect was 'the most probable cause' of the injury") (citation omitted). In Louisiana, the strength of this causal connection hinges on a duty-risk analytical framework, namely whether a manufacturer's duty to provide a safe product encompasses the risk resulting in the plaintiff's harm. Ford v. Pennzoil, 974 F. Supp. 559, 566 (E.D. La. 1997). See also Younger v. Marshall Indus., 618 So. 2d 866, 872-73 (La. 1993) (choosing to apply a duty-risk analysis in determining the extent of a party's liability); Mitchell v. Fid. & Cas. Co., 488 So. 2d 1089, 1091 (La. Ct. App. 1986); Carter v. City Parish Gov't, 423 So. 2d 1080, 1087 (La. 1982). The superceding cause doctrine is a related facet of proximate causation. Ford, 974 F. Supp. at 566. Under that doctrine, a tortfeasor is not liable for damages brought about by a later, separate, independent, intervening cause, even though the tortfeasor's conduct may have created the original peril. Id. Therefore, a manufacturer of an unreasonably dangerous product will be relieved of liability only if an intervening cause superseded the original negligence and alone produced the injury. Masters v. Courtesy Ford Co., 758 So. 2d 171, 193 (La. Ct.

App. 1999) (emphasis added), judgment vacated on other grounds, 765 So. 2d 1055 (La. 2000). See also Mendoza v. Mashburn, 747 So. 2d 1159, 1168 (La. Ct. App. 1999); Domingue v. State Dep't of Pub. Safety, 490 So. 2d 772, 775 (La. Ct. App. 1986). However, foreseeable intervening forces are within the scope of the original risk and, therefore, will not relieve the manufacturer of liability. Masters, 758 So. 2d at 193.

Under Louisiana's duty-risk model, the district court concluded that finding Visioneering 30% at fault did not conflict with the jury's special verdict that failure to perform a point-load test was an intervening cause of the accident. Specifically, Visioneering's duty under the LPLA to provide intertank platforms without any unreasonably dangerous characteristics in design included the foreseeable risk that Lockheed would subsequently fail to perform the necessary point-load test, and that failure would lead to Paul Mazant's injury. Evidence at trial revealed that Visioneering knew of the significance of the point-load test during the design phase of the intertank platforms and recommended it to Lockheed. However, the communications between Visioneering and Lockheed created ambiguity as to which would perform the test. Additionally, Visioneering failed to seek proper authorization from Lockheed for the testing after Lockheed seemingly agreed to it. Based on the evidence presented at trial, the jury's comparative fault and intervening cause findings, and the resulting liability of both Visioneering and Lockheed, are consistent with Louisiana law. See LA. CIV. CODE ANN. art. 2323 (providing that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons . . . shall be determined") (emphasis added).

Furthermore, the "ways of establishing that a product is unreasonably dangerous [under the LPLA] are predicated on principles of strict liability, negligence, or warranty." Jefferson v. Lead Indus. Ass'n, 106 F.3d 1245, 1251 (5th Cir. 1997) (emphasis added). As Visioneering contends, its failure to

perform the point-load test may have been predicated on "negligence," but this "negligence" occurred in the design phase, creating an unreasonably dangerous product under the LPLA. Therefore, the plaintiffs did not prevail based on a separate claim of negligence, apart from the LPLA, but instead under the LPLA by proving that the point-load test should have been performed as part of the design of the Unit 5 intertank platform. See id. (observing that under the LPLA, "neither negligence, strict liability, nor breach of an express warranty is any longer viable as an independent theory of recovery against a manufacturer") (emphasis added).

In sum, because there is a view of the case which makes the jury's answers consistent, the district court did not abuse its discretion in entering judgment for the plaintiffs. See Griffin, 471 F.2d at 915; Atl. & Gulf Stevedores, 369 U.S. at 364; Gallick, 372 U.S. at 119.

## B. Whether Jury's Verdict is Supported by Evidence

Visioneering alternatively argues that there was no evidence at trial to support a finding by the jury that Visioneering should have performed the point-load test as a part of the design of the intertank 5 platform, specifically because Lockheed controlled the design of the intertank platforms through its SOW.

"The standard for appellate review of a jury's verdict is exacting." Hiller v. Mfrs. Prod. Research Group of N. Am., 59 F.3d 1514, 1522 (5th Cir. 1995) (quoting Chem. Distrib., Inc. v. Exxon Corp., 1 F.3d 1478, 1483 (5th Cir. 1993)). We must uphold the verdict unless the evidence and inferences point so overwhelmingly in favor of one party that reasonable individuals could not reach any contrary verdict. Id. (citation omitted). "If there is evidence of such quality and weight that reasonable and fair minded [individuals] in the exercise of impartial judgment might reach different conclusions, the jury function may not be invaded." Id. Even if we, as the trier of fact, may have come to a different conclusion, we cannot re-evaluate credibility of witnesses nor re-weigh the

evidence. Rideau v. Parkem Indus. Serv., Inc., 917 F.2d 892, 897 (5th Cir. 1990) (citing Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1559 (5th Cir. 1985)).

As we previously concluded, based on the record evidence and reasonable inferences drawn from that evidence, the jury could reasonably have found that Visioneering should have performed the point-load test as part of the design of the Unit 5 intertank platform and that its failure to perform the point-load test resulted in a design defect under the LPLA that proximately caused Paul Mazant's injuries. We therefore will not disturb the jury's verdict.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.